## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NORMA CISNEROS, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 1:21-cv-04285 |
| NUANCE COMMUNICATIONS, INC., ) ) | Hon. John J. Tharp Jr. |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANT NUANCE COMMUNICATIONS, INC.'S
<u>MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>**

Defendant Nuance Communications, Inc. ("Nuance") respectfully submits this Memorandum in support of its Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

In 2017, Plaintiff Norma Cisneros, a customer of Charles Schwab ("Schwab"), voluntarily enrolled in Schwab's "voice ID" feature, which permits a Schwab customer to affirmatively choose to use their voice to confirm their identity in order to access their Schwab account, rather than using security questions. Plaintiff has been voluntarily using the Schwab voice ID feature ever since.

On May 12, 2021, Plaintiff filed this action, alleging that Schwab and Nuance, the third party that provided the software necessary for Schwab to offer voice ID to its customers, violated her privacy rights under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") by collecting, storing, and using her biometric data when she enrolled in and used Schwab's voice ID. (Although she alleged that both Schwab and Nuance failed to comply with BIPA, she named only Nuance as a defendant.)

Nuance moved to dismiss Plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 10.) Nuance demonstrated, among other things, that (1) Plaintiff's claims are precluded by Section 25(c) of BIPA; (2) Plaintiff failed to plausibly allege that Nuance had collected or captured her biometric data; and (3) Plaintiff failed to sufficiently plead claims under BIPA because she failed to plausibly allege that the purported violations occurred in Illinois. (Dkt. 11.)

Rather than contest Nuance's motion to dismiss, Plaintiff filed a First Amended Class Action Complaint (the "Amended Complaint"). (Dkt. 14.)

As Nuance demonstrates below, the Amended Complaint wholly fails to remedy the deficiencies identified in Nuance's motion to dismiss the initial complaint and should be dismissed in its entirety under Rule 12(b)(6).

*First*, Plaintiff's claims are barred by Section 25(c) of BIPA, which provides that "[n]othing in this Act shall be deemed to apply in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder." 740 ILCS 14/25(c). Schwab undisputedly is a "financial institution" subject to the Gramm-Leach-Bliley Act ("GLBA"). Notwithstanding Plaintiff's assertion that she does not "purport to impose any of BIPA's requirements on Charles Schwab," (Dkt. 14 ¶ 45), the allegations in the Amended Complaint make clear that Plaintiff undoubtedly *does* seek to apply BIPA to Schwab. Plaintiff's claims thus are precluded by Section 25(c) of BIPA.

*Second*, even if her claims were not barred by Section 25(c), Plaintiff fails to plead sufficient facts to plausibly allege any claims against Nuance under BIPA.

*Third*, Plaintiff does not sufficiently plead a claim under BIPA because she fails to plausibly contend that the alleged violations occurred in Illinois.

## BACKGROUND

Plaintiff is a customer of Schwab. (Dkt. 14 ¶ 33.) Schwab "offers its customers 'voice ID,' which allows its customers to authenticate themselves by using their voice," rather than using a traditional password. (*Id.* ¶ 34.) Plaintiff has been using Schwab's "voice ID" feature "since at least 2017." (*Id.* ¶ 38.)

Schwab makes a straightforward disclosure to its customers that Schwab's voice ID feature involves the collection, use, and storage of voice data. Schwab states, among other things, that

"Schwab is introducing a new voice ID service that uses voice biometrics technology to identify you by your unique voice," "just like your fingerprint, your voiceprint is uniquely yours," and "we store a digital representation of your voice using a proprietary algorithm." (*Id.* ¶¶ 35, 36.) Schwab requires its customers to "enroll" in voice ID – *i.e.*, it is an optional feature that customers, including Plaintiff, voluntarily chose to enroll for and use. (*Id.* ¶ 37.) Plaintiff alleges she provided her biometric data to Schwab when she elected to use Schwab's voice ID feature. (*See id.* ¶¶ 37, 57.)

Plaintiff does not name Schwab as a defendant; instead, Plaintiff alleges purported claims only against Nuance. Nuance provided Schwab with the software with which Schwab makes voice ID available to its customers. (*Id.* ¶¶ 33, 60.) Plaintiff contends that, in doing so, Nuance violated Sections 15(b) and (a) of BIPA. (*See id.* ¶¶ 95-114.) For example, Plaintiff alleges:

- Nuance violated BIPA by allegedly failing to require Schwab to disclose to Schwab's customers that Nuance allegedly was collecting and storing their biometric data when they used Schwab's voice ID (*see id.* ¶ 76);

- Nuance violated BIPA by allegedly failing to interact with Schwab's customers in order to make written disclosures to those customers that Nuance allegedly was collecting and storing their biometric data, and to obtain executed written releases from those customers, before they first used Schwab's voice ID (*see id.* ¶¶ 80, 81, 85); and

- Nuance violated BIPA by allegedly failing to require Schwab "to link to the Nuance privacy statement such that any disclosures made there are known to [Schwab's] customers" (*see id.* ¶ 77).

## ARGUMENT

As Nuance demonstrates below, Plaintiff again fails to sufficiently plead any claim against Nuance upon which relief can be granted, and the Amended Complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

3

A court should grant a motion to dismiss under Rule 12(b)(6) when the complaint fails to state a legal claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007); *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1065 (N.D. Ill. 2020). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Alam v. Miller Brewing Co.,* 709 F.3d 662, 666 (7th Cir. 2013). Rather, Fed. R. Civ. P. 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief," and that showing must include enough facts to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

Nuance respectfully submits that, as shown below, the Amended Complaint fails to state a claim against Nuance for several independent reasons and should be dismissed in its entirety.

**I.     Plaintiff's Claims Are Barred by Section 25(c) of BIPA.**

Plaintiff fails to state a claim under BIPA against Nuance because Section 25(c) of BIPA broadly prohibits applying BIPA "in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of [GLBA]." 740 ILCS 14/25(c). It is indisputable that Schwab is a "financial institution" regulated under GLBA, and, as demonstrated below, clear that Plaintiff's claims here seek to apply BIPA to Schwab. Plaintiff's claims thus are barred by Section 25(c) and should be dismissed.

**A.     Section 25(c) of BIPA Bars Any Action or Claim That Seeks to Apply BIPA "In Any Manner" to a Financial Institution Regulated Under the GLBA.**

When it enacted BIPA in 2008, the Illinois General Assembly included a provision that broadly bars any action or claim that seeks to apply BIPA "in any manner to a financial institution

4

or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder." 740 ILCS 14/25(c).

The cardinal rule of statutory interpretation is that courts are to give effect to the legislature's intent. *See, e.g.*, *Tolene v. T-Mobile, USA, Inc.,* 178 F. Supp. 3d 674, 685 (N.D. Ill. 2016) (applying Illinois law); *Ryan v. Board of Trustees of General Assembly Retirement System*, 236 Ill.2d 315, 319, 924 N.E.2d 970, 973 (2010). Where the statutory language is clear and unambiguous, courts should not "read into it exceptions, conditions, or limitations that the legislature did not express." *Ryan,* 236 Ill.2d at 319-20; *Tolene*, 178 F. Supp. 3d at 685.

The language of Section 25(c) of BIPA is plain and unambiguous. The provision states "[n]othing in this Act shall be deemed to apply in any manner" – a clear articulation of the broad, unconditional exemption from the statute that the General Assembly intended to create. 740 ILCS 14/25(c). Section 25(c) then unambiguously identifies the type of entity to which BIPA shall not be applied "in any manner": "a financial institution or an affiliate that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder." *Id.*

This clear and unambiguous statutory language leaves no doubt about the General Assembly's intent: that BIPA shall not be applied "in any manner" to "financial institutions" subject to Title V of GLBA, whether by bringing suit against a financial institution directly, *or* by bringing suit against a financial institution's software provider, and through that action seeking to apply BIPA to the financial institution and to the financial institution's relationships with its customers. Under Illinois law, that unambiguous statutory language should be enforced as written. *See, e.g., Ryan*, 236 Ill.2d at 319-20 (holding that a pension limitation that used phrases like "*none of the benefits*" and "*any felony*" were plain, broad mandates by the Illinois legislature that must be followed by the courts without the imposition of restrictions or limits not included in the text).

5

Illinois law also provides that the Court "must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous." *E.g., People v. Casler*, 2020 IL 125117, ¶ 24. In addition, "[w]hen the legislature uses certain language in one part of a statute and different language in another, we may assume different meanings were intended." *People v. Fredericks*, 2014 IL App (1st) 122122, ¶ 23.

Applying these principles to Section 25(c) further supports reading that provision as creating a broad, unconditional prohibition against applying BIPA "in any manner" to any financial institution subject to Title V of GLBA. Section 25 contains other exemptions from the statute that do not include language as broad as Section 25(c). *See* 740 ILCS 14/25(b) ("[n]othing in this Act shall be construed to conflict with the X-Ray Retention Act") and *id.* § 25(d) ("[n]othing in this Act shall be construed to conflict with the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004").

In contrast to the exemptions in Sections 25(b) and (d), which only apply when there is *conflict* between BIPA and another statute, and only provide an exemption from the specific provisions of BIPA that create such conflict, the Section 25(c) prohibition against applying BIPA "in any manner to" financial institutions subject to Title V of GLBA is broad, unconditional, and absolute. Reading Sections 25(b), (c), and (d) together demonstrates that the General Assembly certainly knew how to draft a conditional, limited exemption from the requirements of BIPA, and consciously chose not to do so when it came to the broad prohibition set forth in Section 25(c).

**B.    Schwab Is a Financial Institution Subject to Title V of GLBA.**

Schwab is a financial institution subject to Title V of GLBA. Title V applies to "any institution the business of which is engaging in financial activities as described in section 1843(k)

6

of title 12." 15 U.S.C. § 6809; *see also id.* § 6801; 16 C.F.R. § 313.3(b). Section 1843(k) defines activities "considered to be financial in nature" to include, among other things, "[l]ending, exchanging, transferring, investing for others, or safeguarding money or securities," "[p]roviding financial, investment, or economic advisory services," and "[u]nderwriting, dealing in, or making a market in securities." 12 U.S.C. § 1843(k)(4).

Schwab is, among other things, a broker dealer involved in securities brokerage. *See* Federal Financial Institutions Examination Council, *Charles Schwab & Co., Inc. Institution Profile*, https://www.ffiec.gov/npw/Institution/Profile/1026641?dt=20171020 (last visited Nov. 2, 2021) (categorizing Schwab as a "Securities Broker/Dealer" whose primary activity is "SECURITIES BROKERAGE"); https://www.schwab.com/transparency/relationship-summary-bd (describing Schwab as a broker-dealer registered with the Securities and Exchange Commission); SEC CIK Report, *Charles Schwab & Co., Inc,* https://sec.report/CIK/0000087634 (last visited Sept. 17, 2021) ("Charles Schwab & Co, Inc., is a broker-dealer regulated by the U.S. Security and Exchange Commission.").[1] Schwab thus is "a financial institution . . . subject to Title V of [GLBA] and the rules promulgated thereunder." *See* 740 ILCS 14/25(c).

### C. Plaintiff's Claims Seek to Apply BIPA to Schwab, and Thus Are Barred by Section 25(c).

---

[1] The Court may take judicial notice of facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2). Judicially noticed documents may be considered in connection with a Rule 12(b)(6) motion to dismiss without converting such a motion into a motion for summary judgment. *E.g., Papasan v. Allain*, 478 U.S. 265, 269 n.1 (1986); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). Documents retrieved from a publicly available government website qualify as documents eligible for judicial notice under Fed. R. Evid. 201(b)(2). *E.g., Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003); *Laborers Pension Fund v. Blackmore Sewer Const., Inc.*, 298 F.3d 600, 607–08 (7th Cir. 2002); *Koger v. Dart*, 114 F. Supp. 3d 572, n.4 (N.D. Ill. 2015).

Although Plaintiff does not expressly name Schwab as a defendant in this action, there is no doubt that Plaintiff's claims here seek to apply BIPA to Schwab, and those claims thus are barred entirely by Section 25(c) of BIPA.

For example, according to Plaintiff, in order for Nuance to comply with BIPA, it was necessary for Nuance to "*require* its clients to acknowledge that Nuance is capturing and storing this sensitive biometric information when a customer uses one of Nuance's products on the client's website," and that Nuance allegedly violated BIPA by not requiring Schwab to make that disclosure to Schwab's customers. (*See* Dkt. 14 ¶ 76 (emphasis added).) Similarly, Plaintiff pleads that Nuance violated BIPA by allegedly failing to "*require*[]" its customers "to link to the Nuance privacy statement such that any disclosures made there are known to the client's customers." (*See id.* ¶ 77 (emphasis added).)

Plaintiff also asserts that Nuance violated BIPA by allegedly failing *to interact with Schwab's customers* in order to make written disclosures to Schwab's customers that Nuance allegedly was collecting and storing their biometric data before they first used Schwab's voice ID. (*See id.* ¶¶ 76-80, 112.) Likewise, she claims that Nuance violated BIPA by allegedly failing *to interact with Schwab's customers* in order to obtain executed written releases from Schwab's customers before they first used Schwab's voice ID. (*See id.*)

In addition, Plaintiff seeks injunctive relief requiring Nuance to provide the voice ID software to Schwab "in compliance with BIPA," (*see id.* ¶¶ 104, 114), which, according to Plaintiff, would include Nuance *requiring* Schwab to make disclosures to Schwab's customers about Nuance's alleged involvement in collecting and storing biometric data (*see id.* ¶¶ 76-77), or *requiring* Schwab to permit Nuance to interact with Schwab's customers in order to make

8

disclosures to and obtain consents from those customers that Plaintiff contends are required by BIPA. (*See id.* ¶¶ 78, 80.)

Thus, Plaintiff's Amended Complaint makes clear that, in her view, BIPA provides Nuance with only three options: (1) Nuance could *require Schwab* to make disclosures to and obtain consents from its customers relating to Nuance's alleged role and alleged "disclosures" of data; (2) Nuance could *require Schwab* to permit Nuance to interact directly with Schwab's customers for the purpose of doing so; or (3) Nuance could cease providing the voice ID software to Schwab (or, more to the point, never have provided the voice ID software to Schwab in the first place). Any of those options, however, unquestionably involves applying BIPA to Schwab, because they involve either requiring Schwab to comply with BIPA itself, or requiring Schwab to permit its software provider to interact with Schwab's customers in order to comply with BIPA, or forcing Schwab to forego using any third-party provider's voice authentication software *because* of BIPA.

Courts addressing similar questions have found that a claim is preempted where the plaintiff's suit against a third-party acting on behalf of a bank would result in an indirect application of the statute to the exempted entity. *See SPGGC, LLC v. Ayotte*, 488 F.3d 525, 532 (1st Cir. 2007) (where bank was exempt from liability due to preemption under the National Banking Act, it would be "contrary to the language and intent of the [Act] to allow states to avoid preemption of their own statutes simply by enacting laws that prohibited non-bank firms from providing national banks with the resources to carry out their banking activities."); *Pacific Capital Bank N.A. v. Milgram*, No. 08-0223 (FLW), 2008 WL 700180, at *5 (D.N.J. Mar. 13, 2008) (vendor "restrictions that are placed on agents of the national banks . . . indirectly regulate the banks' business"); *Owensboro Nat. Bank v. Moore*, 803 F. Supp. 24, 32 (E.D. Ky. 1992) (allowing states to "regulate indirectly what they cannot regulate directly" would produce an "illogical

9

result.") So too here – Plaintiff's suit would indirectly apply to Schwab and require it to change its security practices.

Plaintiff's claims against Nuance thus are barred by the plain and unambiguous language of Section 25(c) and should be dismissed under Rule 12(b)(6).

## II. Plaintiff Fails to Plead Sufficient Facts to Plausibly Allege Nuance Violated BIPA.

As a separate and independent basis for dismissal of the Amended Complaint, Nuance respectfully submits that, as demonstrated below, Plaintiff has failed to plead sufficient facts to plausibly allege that Nuance violated Section 15(b) of BIPA.

In order to state a claim against Nuance under Section 15(b) of BIPA, Plaintiff must plausibly allege that Nuance collected, captured, purchased, received through trade, or otherwise obtained Plaintiff's "biometric identifier" or "biometric information." *See* 740 ILCS 14/15(b). As demonstrated below, Plaintiff fails to do so, and her claim under Section 15(b) should be dismissed.

Plaintiff alleges that Nuance provides the software that Schwab uses to offer the voice ID feature to its customers (*see* Dkt. 14 ¶¶ 33, 34), that Plaintiff enrolled in "Charles Schwab's voice ID program" (*id*. ¶ 38), and makes a conclusory allegation that the data collected by voice ID was "uploaded or sent to Nuance." (*See id*. ¶ 41.) Plaintiff does not, however, plead any facts about how Nuance also supposedly collects or captures her biometric data, and instead does nothing more than make repeated, conclusory assertions that Nuance did so. (*See, e.g., id*. ¶ 39 (alleging that "Nuance capture, collects, obtains, utilizes, and stores the Plaintiff's voice ID voiceprint…"))

Such conclusory, fact-free pleading falls far short of sufficiently alleging that Nuance collected or captured Plaintiff's biometric data, and therefore is subject to the requirements of Section 15(b) of BIPA. *See, e.g., Leroy Jacobs v. Hanwha Techwin America, Inc.,* No. 21 C 866, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021) (dismissing Section 15(b) claim, and noting that

10

"plaintiff repeatedly alleges that defendant 'collected' his biometric data without alleging how, when, or any other factual detail. These allegations 'merely parrot' BIPA's statutory language; they do not provide any 'specific facts to ground [plaintiff's] legal claims,'" and that "a complete reading of the complaint makes clear that defendant is merely a third-party technology provider"); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (dismissing Section 15(b) claim because the plaintiff did not plausibly allege that the defendant finger scanner manufacturer itself "collected, captured, or otherwise obtained [plaintiff's] biometric information," and it was clear from the complaint that the employer collected the data using a system provided by the technology-provider defendant); *Bernal v. ADP, LLC*, 2019 WL 5028609, at *1-2 (Ill. Cir. Ct. Aug. 23, 2019) (dismissing Section 15(b) claim against provider of biometric scanning technology because the plaintiff "failed to allege facts sufficient ... for the Court to properly assess Defendant's actual involvement, relative to the biometric scanning technology, beyond the fact that Defendant supplied [plaintiff's employer] with the technology.")

To be sure, Plaintiff does allege that Nuance's privacy policy generally states, with respect to Nuance's various software and technology products, that Nuance "*may* capture your voice and the words that you speak into the product," and "*may* collect personal data processed in those products, including voice recordings, texts, names, or phone numbers." (*See* Dkt. 14 ¶¶ 66, 67 (emphasis added).) Plaintiff mischaracterizes Nuance's statements that it "may" collect certain information as "admissions" that Nuance "captures and uses voiceprints" when Schwab uses Nuance's software to offer voice ID to Schwab's customers (*see id.* ¶¶ 66-67, 71, 73), but that is hardly a reasonable or plausible reading of the language quoted from Nuance's privacy policy. Moreover, even if one were to read Paragraphs 66 and 67—or the other references in the Amended Complaint to Nuance's various technology offerings (*see id.* ¶¶ 61-62, 68-70, 72-74)—as alleging

11

that it was *possible* that Nuance collected Plaintiff's biometric data, such speculative allegations are insufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Plaintiff thus fails to plead facts that plausibly allege that Nuance collected or captured her biometric data, and her claim under Section 15(b) of BIPA should be dismissed.

### III. Plaintiff Fails To Plausibly Plead that Nuance's Alleged Conduct Occurred in Illinois.

Even if the Court were to conclude that Plaintiff had plausibly alleged that Nuance violated BIPA (which, as demonstrated above, it should not), Plaintiff nevertheless fails to state a claim because she does not plausibly allege that any of Nuance's alleged conduct occurred in Illinois.

As the Illinois Supreme Court has held, an Illinois statute "is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 184-85 (2005); *see also Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017) (citing *Avery*); *Monroy v. Shutterfly, Inc.,* No. 16 C 10984, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017) (citing *Avery*). BIPA does not contain any such provision, and thus cannot be applied extraterritorially. *See generally* 740 ILCS 14/1, *et seq.*; *see also Rivera,* 238 F. Supp. 3d at 1104 (BIPA "was not intended to and does not have extraterritorial application."); *Monroy*, 2017 WL 4099846, at *5 (same). As a result, in order to state a claim under BIPA, the alleged violation must occur within Illinois. *Rivera*, 238 F. Supp. 3d at 1100 (the "asserted violations of [BIPA] must have taken place in Illinois for them to win").

To determine whether a claim alleges a BIPA violation occurring in Illinois, courts look to the allegations to decide whether "the circumstances that relate to the disputed transaction occur[red] primarily and substantially in Illinois." *Landau v. CNA Financial Corp.*, 381 Ill. App. 3d 61, 63, 65 (1st Dist. 2008) (quoting *Avery*, 216 Ill.2d at 187) (affirming dismissal of complaint because "majority of circumstances relating to the alleged violation of the Consumer Fraud Act

occurred outside of Illinois"); *Rivera*, 238 F. Supp. 3d at 1101 (quoting *Avery*); *Monroy*, 2017 WL 4099846, at *6 (quoting *Avery*).

Indeed, in another case involving alleged BIPA claims, the United States District Court for the District of Delaware granted motions to dismiss under Rule 12(b)(6) because the plaintiffs failed to allege the purported BIPA violations occurred primarily and substantially in Illinois. *McGoveran v. Amazon Web Services, Inc.*, No. 1:20-cv-01399-LPS, 2021 WL 4502089, at *4 (D. Del. Sept. 30, 2021). In *McGoveran,* the plaintiffs were Illinois residents who brought suit against Amazon Web Services, Inc. ("AWS") and Pindrop Security, Inc. ("Pindrop"). *Id* at *1. Pindrop provides alleged voiceprint technology that can be integrated with AWS's cloud based call center services. *Id.* One of AWS' clients is John Hancock, a financial services company based in Massachusetts. *Id.* Plaintiffs alleged that when they called John Hancock's customer service number, they were located in Illinois and using Illinois telephone numbers, and that AWS collected their voiceprint each time they called, using Pindrop's voiceprint technology. *Id.* at *2. They further alleged that AWS stored their voiceprints. *Id.*

The district court found that, because the AWS data centers are "located wholly outside Illinois," and Pindrop is "located outside Illinois," "[t]here is no indication in the complaint that Defendants did anything in Illinois." *Id.* at *4. The court rejected plaintiffs' argument that the defendants' alleged failure to provide notice and obtain consent or to provide a written biometric data retention policy public "necessarily occurred in Illinois," noting, it "makes no sense to assign a location for an act that did not occur." *Id* at *4. This left nothing to connect the claims to Illinois other than the plaintiffs' "repeated statements (phrased three different ways) about Plaintiffs' residency[.]" *Id.* The court found that allowing the claim to stand would "fl[y] in the face of Illinois cases holding that a plaintiff's residency is not enough to survive a motion to dismiss based on

13

extraterritoriality" and "impose liability on a vast number of corporations who do no business in Illinois and who lack any other significant connection to Illinois." *Id.* at *6.

So too here. Plaintiff does not allege any factual content from which the Court could reasonably infer that Nuance collected, used, or stored Plaintiff's voiceprint in Illinois. Plaintiff acknowledges that Nuance is a Delaware corporation, with a principal place of business in Burlington, Massachusetts. (*See* Dkt. 14 ¶¶ 2, 4, 62 n.15, 98.) Plaintiff does not allege that Nuance has any facility in Illinois, or that Nuance received or processed any data relating to Plaintiff's voice in Illinois. (*See generally id; see also id.* ¶¶ 41, 49 (data is "uploaded or sent to Nuance from Illinois.")) Plaintiff does not plead that she called a Schwab call center located in Illinois, that Schwab operates Nuance's software on a server in Illinois, or that any data processing done by that software occurs in Illinois. (*See generally id.*) In short, Plaintiff does not plausibly allege that the circumstances relating to Nuance's alleged violations of BIPA occurred "primarily and substantially in Illinois." *McGoveran*, 2021 WL 4502089, at *4; *Landau*, 381 Ill. App. 3d at 63.

Plaintiff's amendments to the complaint make clear that there are no facts purportedly connecting this dispute to Illinois other than her residency. As in *McGoveran,* the only concrete allegations in the Amended Complaint are "repeated statements (phrased three different ways) about Plaintiffs' residency":

- "[Plaintiff's] use of Charles Schwab's voice ID program occurred in Illinois." (Dkt. 14 ¶ 38)

- The purported collection of her data "occurred while Plaintiff was [sic] Illinois, while talking on the phone in Illinois, and while verifying her account in Illinois." (*Id* ¶ 40.)

- Plaintiff's "user account and mobile device[]" were Illinois-based. (*Id* ¶ 49.)

These scant allegations make clear that if Plaintiff had enrolled in voice ID while, say, traveling through a neighboring state, this dispute would have *zero* connection to Illinois. A

14

connection driven by the plaintiff's unilateral actions cannot support a finding that the disputed conduct "primarily and substantially" took place in Illinois. Plaintiff's allegation that "Nuance knew that Charles Schwab had customers in Illinois" (*id.* ¶ 43) falls far short of alleging the required connection with Illinois – because it has no bearing on whether the alleged conduct from which the claims arise occurred in Illinois.

Nuance recognizes that, in other cases, some courts have determined that whether the plaintiff's claims involve the extraterritorial application of BIPA could not be resolved at the pleading stage. *See, e.g., Vance v. Int'l Bus. Mach. Corp.*, No. 20 C 577, 2020 WL 5530134, at *3 (N.D. Ill. Sept. 15, 2020); *Rivera*, 238 F. Supp. 3d at 1101-02; *Monroy*, 2017 WL 4099846, at *6. Nuance respectfully submits, however, that this case is more analogous to *McGoveran*, because Plaintiff has not alleged *any* circumstances relating to her alleged claims that occurred in Illinois, and the Amended Complaint makes clear that the only conduct connected to Illinois was her own. Because Plaintiff has wholly failed to plausibly allege claims that involve an application of BIPA that is permissible under *Avery*, she fails to state a claim against Nuance upon which relief can be granted. *See, e.g., Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (granting motion to dismiss); *Landau*, 381 Ill. App. 2d at 65 (affirming grant of motion to dismiss).

## **CONCLUSION**

WHEREFORE, for all of the reasons set forth above, Nuance Communications, Inc. respectfully requests that the Court grant its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and enter an order dismissing Plaintiff's First Amended Complaint in its entirety and with prejudice, and providing for such other and further relief as is just and appropriate.

Dated: November 12, 2021　　　　　　　　　　　NUANCE COMMUNICATIONS, INC.

　　　　　　　　　　　　　　　　　　　　　　　　By: */s/ David C. Layden*　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　　　　One of its attorneys

David C. Layden
Elena M. Olivieri
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350

## **CERTIFICATE OF SERVICE**

I certify that on November 12, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

*/s/ David C. Layden*